JAMES P. BARRY *vs.* MICHAEL H. CURLEY.

Suffolk. November 17, 1908. — May 20, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Payment. Assignment. Receipt.*

In an action against a consignee of goods, which previously had been delivered, for freight charges, in which the plaintiff sued as the assignee of a transportation company to which the charges were alleged to be due from the defendant, and in which the defendant relied on the defense of payment, it appeared that the plaintiff was the head clerk in Boston of the transportation company, a Maryland corporation, whose corporation offices were at Baltimore, that the plaintiff, contrary to a rule of the company, delivered the goods to a teamster, who for years had received and paid for freight consigned to the defendant, without prepayment of the charges, that afterwards the teamster failed to pay the charges and the defendant refused to pay them, that thereupon the plaintiff paid the amount of the charges to his employer, the transportation company, and received from that company an instrument acknowledging the receipt from the plaintiff of the amount paid by him "covering freight and charges" on the shipments in question. The plaintiff testified that before the payment he explained the situation to the auditor of the company and that the auditor "was to get an assignment of the company from Baltimore," and that later the plaintiff received an instrument, which had been forwarded to Baltimore for execution, purporting to assign to the plaintiff the claim of the company against the defendant for the freight charges in question. The defendant contended that the claim of the transportation company had been extinguished upon its payment by the plaintiff, and could not be revived by the subsequent delivery of the assignment. *Held,* that there was evidence warranting a finding that the amount paid by the plaintiff to the transportation company was not paid in satisfaction of the freight charges but was paid for an assignment of the claim against the defendant and so was received by the transportation company, and that the plaintiff was entitled to recover against the defendant under the assignment.

CONTRACT to recover certain freight moneys alleged to be owed by the defendant to the plaintiff. Writ in the Municipal Court of the City of Boston dated December 13, 1904.

The answer contained a general denial and an allegation of payment.

On appeal to the Superior Court the case was tried before *Lawton,* J. The following facts appeared at the trial.

At the time the alleged bills were incurred, the plaintiff was the head clerk in Boston of the Merchants and Miners Trans-

portation Company, a Maryland corporation running freight boats between Boston and Newport News, Virginia, with its corporation offices at Baltimore, Maryland.

The plaintiff brought this action as assignee of the rights of the Merchants and Miners Transportation Company, to recover certain freight charges alleged to be owed by the defendant on certain whiskey consigned to him in Boston.

A teaming firm named R. Johnson and Company received the freight in question from the Merchants and Miners Transportation Company and delivered it in Boston.

Most of the freight in question was intended for and was delivered to various firms in Boston and was consigned to the defendant with his consent, in carload lots, thereby obtaining carload rates from the railroad company to which it was delivered by the shipper. A part of the goods in question were received by the defendant for his own use and he testified that he had paid his share of the freight to R. Johnson and Company, the teamsters.

A part of the goods were for one Crowley and were received by the defendant who paid the freight on them, blending them in his rectifying store and then delivered them to Crowley. The whiskey was sold by and shipped from a distillery in Kentucky in which the defendant's brother was interested.

R. Johnson and Company had done all the trucking of the defendant for years and had received the defendant's freight from the Merchants and Miners Transportation Company and had paid for it for years.

The plaintiff always had delivered goods consigned as these were to the defendant to R. Johnson and Company, who usually had paid the entire freight on them.

The cashier of the Merchants and Miners Transportation Company testified that the defendant had once or twice on previous shipments of this character paid the freight on the entire shipment by his own check.

R. Johnson and Company were adjudged bankrupts shortly before the bringing of this action.

Neither the plaintiff nor any representative of the Merchants and Miners Transportation Company had any conversation or any correspondence with the defendant, or with his representa-

tive excepting R. Johnson and Company, until after the failure of R. Johnson and Company.

It was against the rules of the Merchants and Miners Transportation Company, issued to its employees, for them to deliver freight without prepayment to consignees who were not on the credit list. The defendant was not on the credit list, and the plaintiff allowed R. Johnson and Company to have the freight in question without prepayment of the charges.

The plaintiff testified that the freight charges were paid by him to the Boston agency of the Merchants and Miners Transportation Company on April 8, 1904, $286.86, covering the freight and charges on the whiskey enumerated. These charges had not been paid by the defendant or by the teamster who received the delivery check from the freight cashier of the Merchants and Miners Transportation Company. The plaintiff had seen the defendant in regard to paying these freight charges and could not secure the funds from him, so he paid the amount of the charges to the company and received in return the receipt in evidence, and later received the assignment from the treasurer of the Merchants and Miners Transportation Company at Baltimore, Maryland, after it had been made out by the attorneys here in Boston and had been forwarded to Baltimore for execution.

The plaintiff testified that before he paid the money he made an explanation of the situation to the auditor of the company, and "that he was to get an assignment of the company from Baltimore." The auditor was P. W. Kennedy, who signed the assignment as a witness. He happened to be in Boston at the time the plaintiff paid the money and the receipt was given to him. Afterwards the plaintiff testified further on this subject that before he paid the money he made an explanation through the auditor in charge of the accounts. The judge then asked him this question: "But you say that at that time there was no talk on the part of the auditor about sending any assignment?" To this the plaintiff answered, "Not definitely, no. No, there wasn't any definitely, relative to sending an assignment.", Then he was asked by his counsel, "But you had a talk, the money was paid, and then the assignment came?" The plaintiff replied, "The assignment was sent afterwards. Mr. Kennedy is

the witness to the signature of the treasurer.   He was the auditor for the company."

The receipt mentioned above was as follows :

"Merchants & Miners Transportation Company.

$286.86                              Boston, April 8th, 1904

"Received of James Barry Two Hundred and Eighty-six 86—100 Dollars, covering freight and charges on shipments of whisky consigned to M. H. Curley as follows : —

| "S. S. Howard Voyage | #339 | | Entry #2015 | – 55.76 |
|---|---|---|---|---|
| Gloucester " | 388 | " | 2006 | – 27.00 |
| " " | | " | 2007 | – 90.40 |
| " " | | " | 2008 | – 54.05 |
| " " | 387 | " | 2021 | – 59.65 |
| | | | | $286.86 |

"A. M. Graham, Agt.

"H. L. Howe"

The assignment mentioned above was as follows :

"Know all men by these presents that the Merchants & Miners Transportation Company, a corporation duly organized by law, and having a usual place of business in Boston in the County of Suffolk and Commonwealth of Massachusetts, in consideration of one dollar and other valuable considerations to it paid by James Barry of said Boston, the receipt whereof is hereby acknowledged, does hereby assign and transfer to said James Barry all contract rights, claims, demands and causes of action which it now has, and which at any time hereafter it may and shall have against Michael H. Curley of said Boston for an account on account of freight and charges on shipments of whiskey consigned to said Michael H. Curley as follows :

| "SS. Howard | voyage #339, entry 2015, | 55.76 |
|---|---|---|
| SS. Gloucester, | voyage 388, entry 2006, | 27. |
| SS. Gloucester, | voyage #388, entry 2007, | 90.40 |
| SS. Gloucester, | voyage #388, entry 2008, | 54.05 |
| SS. Gloucester, | voyage #387, entry 2021, | 59.65 |
| | "Total, | 286.86 |

" To have and to hold the same to said James Barry his executors administrators and assigns forever. And the said Merchants & Miners Transportation Company does hereby constitute and appoint the said James Barry and his assigns to be its attorney irrevocably in the premises to bring suit and to do and perform all acts, matters and things incident thereto, and touching the premises in the like manner to all intents and purposes as it could.

" In witness whereof the Merchants & Miners Transportation Company by          its Treasurer, thereunto duly authorized, has hereunto set its hand and seal.

" Merchants & Miners Transportation Co.

by

" Signed, sealed and delivered          J. H. Robinette
   in the presence of          Treasurer "
   P. W. Kennedy "          (Corporate seal.)

The judge submitted the following issue to the jury with full, proper and sufficient instructions on the question whether the transaction was an assignment: " Did the Merchants and Miners Transportation Company make a valid assignment to the plaintiff ? " The jury answered, " Yes."

The judge also submitted to the jury under full, proper and sufficient instructions the following question: " Did the Merchants and Miners Transportation Company intend to hold Curley liable for the freight charges in question and were they authorized so to do by Curley ? " The jury answered, " Yes."

The judge thereupon ruled that the evidence was not sufficient to warrant the first finding, ordered a verdict for the defendant, and reported the case for determination by this court.

It was agreed that if this court should rule that there was not sufficient evidence for the jury as to whether the above transaction operated as an assignment to the plaintiff of the claims of the Merchants and Miners Transportation Company against the defendant for the freight charges in question, judgment was to be entered for the defendant upon the verdict; but, if this court should rule that there was sufficient evidence for the jury of an assignment, judgment was to be entered for the plaintiff in the sum of $298.80, with interest from the date of the writ.

*F. Burke,* (*J. P. Bell* with him,) for the plaintiff,

*G. F. Ordway,* for the defendant.

MORTON, J. The sole question in this case is whether what took place between the plaintiff and the auditor of the Transportation Company upon receipt by the latter from the plaintiff of the amount of the Transportation Company's demand against the defendant operated as a payment and satisfaction of it or as an assignment of it. If the amount was tendered and received as a payment it extinguished the demand. Whether it was so tendered and received or not depended on what the understanding was at the time when the Transportation Company received the money. If the amount was then tendered and received as a payment, no afterthought or subsequent understanding could revive the demand in the plaintiff's favor, though if it was tendered and received for an assignment the parties could afterwards agree that it should be regarded as a payment. We think that there was evidence warranting a finding that an assignment and not a payment was intended and that the money was so paid by the plaintiff and so received by the Transportation Company.

In the first place the language of the receipt was peculiar. It was not a receipt of the sum named as payment of the freight and charges, as would have been more natural if the sum named had been taken in satisfaction of the demand, but it was a receipt of the sum named as " covering" freight and charges. This was or could be found to have been more consistent with an assignment than a payment having been intended. Again, in answer to questions put by the presiding judge, the plaintiff, though saying at first that he had no talk with the auditor before paying the money about the assignment that was subsequently sent to him, finally said that he thought that before he paid the money to the auditor he explained the situation to him " and that he was to get an assignment of the Company from Baltimore." It is true that later he modified this somewhat. But it was for the jury to say what weight should be given to his testimony. It could not be ruled as matter of law, we think, that it did not warrant them in finding, as they did, that the Transportation Company made a valid assignment to the plaintiff.

Still further, the circumstances under which the plaintiff

apparently became liable to the Transportation Company were such as to render it not unreasonable to say the least to suppose that the Transportation Company desired to assist him so far as it properly could and for that reason intended the transaction to take the form of an assigment rather than of a payment.

The result is that according to the terms of the report judgment will be entered for the plaintiff for $298.80 with interest from the date of the writ.

*So ordered.*